# BOARD OF WATER COMMISSIONERS v. GEORGE BELLAND and Others.[1]

January 20, 1911.

Nos. 16,951—(203).

**Protecting water supply from pollution — closing highway — right to injunction.**

Action to restrain the town authorities of White Bear from removing a fence erected by the plaintiff across a public highway, leading from Edgerton street to Vadnais Lake, a meandered body of water, from which St. Paul derives a portion of its water supply. The fence was erected to prevent access to and the pollution of the waters of the lake. The maintenance of the fence will better enable the plaintiff to prevent the pollution of the waters, and it may be maintained for that purpose under proper conditions without material prejudice to the defendants or the public. The plaintiff has never, by condemnation proceedings or otherwise, acquired any rights in the highway as against the public. The trial court directed judgment permanently restraining the defendants from removing the fence, provided a gate be maintained therein.

*Held*, that the plaintiff is authorized to acquire, by condemnation proceedings, such limited use and control of public highways, subject to proper conditions, as the court in which the proceedings are pending may find to be necessary for the protection of the water supply of the city. After such right has been lawfully acquired, a court of equity has power to protect the plaintiff in the exercise of the right; but it has no power to create it in the first instance. The court erred in directing a permanent injunction to issue.

Action in the district court for Ramsey county to enjoin defendants from removing or in any way interfering with a certain wire fence erected by plaintiff along the west side of Edgerton street to prevent access to, and pollution of, the waters of Vadnais lake. The answer alleged that plaintiff unlawfully erected a fence across a public highway of the town of White Bear and threatens to keep the same fenced regardless of the objections of the town authorities, and prayed that

[1] Reported in 129 N. W. 389.

plaintiff be forever enjoined from obstructing the highway. The case was tried before Hallam, J., who made findings of fact and conclusions of law, as stated in the opinion. From an order denying defendants' motion to amend the conclusions of law or for a new trial, they appealed. Reversed and new trial granted.

*O. H. O'Neill,* for appellants.

*J. C. Michael* and *Kenneth G. Brill,* for respondent.

START, C. J.

This action was brought in the district court of the county of Ramsey to restrain defendants from removing a fence erected by the plaintiff to prevent access to and the pollution of the waters of Vadnais Lake, from which the city of St. Paul obtains a large part of its water supply. The answer alleged, in effect, that the fence in question was erected by the plaintiff in a public highway of the town of White Bear, and by direction of the town board the defendants tore down the fence, which was an obstruction in the highway.

The cause was tried by the court without a jury, and findings of fact made to the effect following:

The plaintiff, acting in pursuance of the powers vested in it by law, and particularly by chapter 9 of the charter of the city of St. Paul, duly instituted proceedings to condemn a strip of land entirely surrounding Vadnais Lake and adjacent thereto, for the purpose of supplying the inhabitants of the city with a supply of pure water from the lake. As a part of such proceedings on July 5, 1904, it duly filed with the register of deeds of the proper county a map of the lake and land adjacent thereto, and indicated thereon the land necessary to be taken by it for such purpose. Thereafter the city acquired by purchase the fee title to all the land adjacent to the lake, including the land upon which the road hereafter mentioned was located, and purchased the land adjacent to and including the fee of the south half of the road herein mentioned, on December 31, 1907, and purchased the land adjacent to and including the fee of the north half of the road on or about August 21, 1908. Since the year 1878 there had been and now is a town road included within the land so indicated on the map, extending from Edgerton street on the east to

the waters of the lake on the west. The road is of value to the defendants and the public only as a means of access from Edgerton street to the waters of the lake, and is used only for that purpose. The map referred to does not show the existence of the highway or road. Prior to the commencement of this action, and in December, 1909, the plaintiff erected a fence across the road at the point where it joins Edgerton street, which the defendants, by the direction of the town board, removed, and they threatened to remove and destroy any fence erected by plaintiff across the road. The plaintiff has rebuilt the fence. The plaintiff supplies the inhabitants of the city of St. Paul, from the lake, with water for drinking and other purposes. The road slopes from Edgerton street towards the lake. The flowage of the waters of the lake at times covers a part of the road, and may at a high stage of water in the lake cover all of the same and reach the fence. Prior to the erection of the fence the public could, and did, drive over the road into the lake, and upon the ice on it, and pollute the waters thereof, and will continue so to do unless the fence is maintained, and the use of the road and the taking of the water and the ice from the lake regulated by the plaintiff. The use of the road by plaintiff is, and reasonable rules and regulations for its use prescribed by plaintiff will be, without detriment to the use of the road by the public, for the only purpose for which it is of value or has been used, and the fence may be maintained by the plaintiff without material prejudice to the defendants or the public. The access of defendants and the public to the lake by means of the road for the purpose of taking water and ice therefrom, if under proper regulations and restriction, will not pollute the waters of the lake. The lake is a meandered body of water outside the corporate limits of the city of St. Paul, approximately one and one-half miles long and three-quarters of a mile wide.

The conclusion of law from these facts was to the effect following:

The plaintiff has the right to take reasonable means and enforce reasonable rules to prevent the pollution of the waters of the lake, and it is entitled to a permanent injunction restraining the defendants from removing or destroying the fence, or in any way interfering with the same, provided the plaintiff shall provide a gate in the fence

by means of which the defendants and the public may have ready access to the shore of the lake with teams for the purpose of removing water and ice therefrom, without driving into the same or polluting the waters thereof.

Judgment was ordered accordingly. The defendants appealed from an order denying their motion to amend the conclusions of law and for a new trial.

The assignments of error, reduced to their lowest terms, raise the question whether the findings of fact of the trial court, as to the pollution of the waters of the lake by the public and its continuance unless the fence in question is maintained, are sustained by the evidence, and whether the court's conclusion of law and direction for judgment are justified by the facts found. The evidence leaves the first question a debatable one, for the trial court might have found for the defendants upon the question; but a consideration of the record satisfies us that the evidence is sufficient, within the rule applicable to such cases, to sustain the findings of fact.

The second question whether the facts found justify the conclusions of law is a more serious one. While it is true that the plaintiff owns the fee of all land adjacent to the lake, yet a strip of the land sixty-six by one hundred sixty-three feet, across which the fence is built, is subject to the easement of a public highway, extending from Edgerton street, a public thoroughfare, to the meandered lake. The trial court expressly found that this strip was an existing public highway. It is also true that the only public use of this highway is to afford access to the lake, the protection of the waters from pollution of which is vested by law in the plaintiff. This authorizes the plaintiff to do any act reasonably necessary for accomplishing such purpose, including the exercise of the power of eminent domain. City Charter, c. 9, §§ 4, 5. We are of the opinion that the plaintiff is authorized to take, by the due exercise of such power, such limited use and control in public streets and highways as the court in which the proceedings are pending find to be reasonably necessary for the protection of the water supply of the city. If, then, the court's findings of fact show that the plaintiff has so acquired the right to maintain a fence and gate in the highway in order to prevent the pollution of the waters of

the lake, the court's conclusion of law is correct; otherwise not, for if the plaintiff has not acquired such right the court cannot confer upon it such right, even upon conditions.

The trial court, and counsel for plaintiff in their brief, attach controlling importance in the determination of the question to the action of the plaintiff in instituting condemnation proceedings in July, 1904. We are unable to find, in the findings of fact or in the entire record, anything to justify the conclusion that the plaintiff had acquired in any manner the right to close the highway in 1909, and thereby deprive the public of free access to the lake. There was no recognition of any public right in the lands sought to be condemned, nor does the record show that the proper public authorities were ever in any manner advised of any purpose to acquire any interest in the highway which would in any manner impair the public easement therein. On the other hand, the record affirmatively shows that the plaintiff, after making and filing the map, acquired by purchase the fee to all of the land it sought to condemn; but it fails to show that any further action was taken in the condemnation proceedings, not even an application to the court for the appointment of commissioners.

The clear inference from the record is that the plaintiff, after it acquired the fee to the land, abandoned the condemnation proceedings; but if, as suggested by the trial court, they are still pending and involve the public easement in the highway, nevertheless the conclusion of law and order for judgment are not justified by the findings of fact. This is obvious from a mere reading of the conclusion of law, which does not merely enjoin the public authorities from interfering with the fence until condemnation proceedings can be consummated, but it enjoins them permanently, and confers upon the plaintiff the right for all time to maintain a fence across the public highway on condition that it maintains a gate therein. This necessarily relieves the plaintiff from any duty of acquiring such right by condemnation proceedings.

In reaching the conclusion that the trial court's conclusions of law are not justified by the facts found, we have not been unmindful of the fact that an ample supply of pure water for the city is of the ut-

most importance, and that to secure such beneficent result the powers conferred upon the plaintiff must be liberally construed, and, further, that in view of the limited extent, importance, and use of this particular highway, the relief granted by the court results in but little inconvenience to the public, but, on the other hand, materially facilitates the commendable efforts of the plaintiff to secure pure water for public use. If such an order had been made in condemnation proceedings after hearing of all parties interested, including the public authorities of the town, and an adjustment of conflicting public interests, it may be conceded that the order would have been valid.

Such, however, is not this case, which is simply one where the plaintiff, without securing the right so to do, erects a fence across a public highway, and then invokes the aid of a court of equity to keep the fence there, and the court grants relief on condition that a gate be maintained in the fence; that is, grants to the plaintiff the right to convert a public highway into a pent road. Such right must be first secured by negotiations with the public authorities or by condemnation proceedings. A court of equity can give effect to the right when once lawfully acquired, but it cannot create the right in the first instance. The fact that the highway in this particular case is a short one and little used by the public is not significant; for if the plaintiff be permitted to close this public highway, without first securing the right so to do, and then invoke the aid of equity to keep it closed, a dangerous precedent will be established, which will enable the plaintiff to close arbitrarily any or all public highways, whenever in its judgment it deems such act to be necessary to protect the water supply of the city.

Order reversed, and a new trial granted.

SIMPSON, J., took no part.